870 A.2d 634 (2005)
376 N.J. Super. 289
STATE of New Jersey, Plaintiff-Appellant,
v.
Frank LAND, Steven Budge, and John Budge, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted March 16, 2005.
Decided April 5, 2005.
Peter C. Harvey, Attorney General, attorney for appellant (Tanya Y. Justice, Deputy Attorney General, of counsel and on the brief).
Yvonne Smith Segars, Public Defender, attorney for respondent Frank Land (David A. Nufrio, Deputy Public Defender, of counsel and on the brief).
Patti & Patti, attorneys for respondent Steven Budge joins in the brief of respondent Frank Land.
*635 Robert A. Mattia, Newton, attorney for respondent John Budge joins in the brief of respondent Frank Land.
Before Judges NEWMAN, AXELRAD and HOLSTON.
The opinion of the court was delivered by
NEWMAN, P.J.A.D.
The State of New Jersey (State) appeals from an order dismissing the State Grand Jury Indictment No. SGJ473-03-2 returned against the three defendants, Frank Land, Steven Budge and John Budge, on a single count of attempted theft by deception in the third-degree. The gravamen of the criminal charge was the infliction of additional property damage to a home after a weather related incident to inflate an insurance claim against Liberty Mutual Insurance Company (Liberty Mutual). We reverse and reinstate the indictment.
The facts are relatively straight forward. During the grand jury proceeding, the Deputy Attorney General (DAG) questioned four potential grand jurors on the record, but individually out of the presence of the remaining State grand jurors, concerning their relationship to Liberty Mutual. Juror number seventeen who was excused, not only had an apartment building insured by Liberty Mutual, but was familiar with the case from a newspaper account and was unsure whether she could be impartial. The other three questioned by the DAG were automobile policy holders of Liberty Mutual, one of whom was no longer a Liberty Mutual insured. None of these jurors had any familiarity with the case nor did they indicate they were prejudiced or biased for or against Liberty Mutual if they were to remain on the case. None of them had ever made a claim against Liberty Mutual.
The DAG contacted the judge designated to hear Brook Murphy and other related issues in the absence of the Mercer County Assignment Judge who has also been designated the Supervising Judge of the State Grand Jury. The designated judge or judges are back-up judges to the Supervising Judge in the event the Supervising Judge is unavailable. The Judges are so designated by order of the Chief Justice.[1] The DAG described the questioning and responses by four specified jurors to the designated judge as contemplated by State v. Murphy, 110 N.J. 20, 538 A.2d 1235 (1988). The judge found that juror number seventeen should be excused, but the others could remain. Based on what was described by the DAG the judge conducted no further interrogation of the jurors.
In granting the dismissal of the indictment, and in denying a motion for reconsideration, the motion judge believed that the grand jurors who had automobile insurance policies with Liberty Mutual should not have remained because of their financial interests and a more definitive examination should have been conducted by the judge. In so ruling, the judge considered it the judge's responsibility to *636 make a personal determination and not through the filtered process employed here.
State v. Murphy, supra, recognized that a defendant charged with an indictment is entitled to an unbiased grand jury. To further the State constitutional guaranty of grand jury indictment, the Supreme Court in the exercise of its supervisory power held that the grand jury presenter "as an officer of the court, ... has a responsibility to bring to the attention of the presiding judge any evidence of partiality or bias that could affect the impartial deliberations of a grand juror." Id. at 33, 538 A.2d 1235. The Court further held that "upon such a disclosure the court should determine whether such partiality or bias exists and whether it justifies excusal of the grand juror from the particular case being considered or from the panel." Ibid.
Rule 3:6-3(a) was adopted following State v. Murphy. The rule reads as follows:
(a) Potential Bias. When appropriate, the Assignment Judge shall inquire of potential grand jurors about such aspects of their background as may reveal possible bias or interest in a matter to come before the grand jury. The Assignment Judge shall instruct the grand jury that without the Assignment Judge's approval no grand juror shall participate in any matter in which that juror has a bias or a financial, proprietary, or personal interest; and if that juror wishes to participate, the juror shall forthwith so inform the prosecutor. The prosecutor shall forthwith inform the Assignment Judge, who shall determine, in camera, whether such bias or interest exists and whether it justifies excusal.
The rule does not require that the Assignment Judge must interrogate personally every potential grand juror who may have a bias in a particular case. Rather, it is left to the Assignment Judge's sound discretion and judgment "when appropriate" to make inquiry in camera of a potential grand juror's possible bias or interest in a particular case. R. 3:6-3(a). Indeed, if the Assignment Judge had to question every potential grand juror who may have a possible bias or interest in a case and not be able to rely on what is presented to him or her by the DAG, the Assignment Judge's time could be substantially occupied by engaging in such inquiries. This is especially so in a county where the State grand jury sits in addition to the County grand jury.
The procedure utilized here through the questioning of the potential grand jurors by the DAG and then presenting the information to the designated judge was in compliance with R. 3:6-3(a). See State v. Hogan, 336 N.J.Super. 319, 350, 764 A.2d 1012 (App.Div.), certif. denied, 167 N.J. 635, 772 A.2d 937 (2001). Moreover, if the designated judge considers the information incomplete, the designated judge could either direct the DAG to supplement the questioning or could conduct the questioning personally. Obviously, there will be instances where the Assignment Judge or, as in this case, the designated judge may deem it necessary and essential to conduct the questioning personally, particularly where a credibility issue may be paramount.
The motion judge determined that further examination by the designated judge was required because of the financial interest three of the potential grand jurors had by reason of being insured by Liberty Mutual for automobile insurance. We disagree. The case involved a property damage claim, not an alleged fraudulent automobile liability claim. Automobiles are required by law to be insured so that *637 it could be anticipated that almost all of those called to serve on the grand jury who are licensed drivers would be insured and a percentage of those drivers would be insured by Liberty Mutual. That, in itself, should not lead to an automatic exclusion. Furthermore, the follow-up questioning by the DAG inquired if a claim had been made or if there was anything about dealings with Liberty Mutual which "would in any way bias or prejudice you relative to your deliberating here today in a matter in which they are allegedly involved?" We discern no reason why further personal inquiry had to be made by the designated judge.
The suggestion that the premium rates for Liberty Mutual policyholders could be affected warranted additional questioning by the designated judge to ascertain any bias is unfounded. There is no relationship between premium ratings for an automobile liability policy and for a homeowners or property policy. The policies are different and insure against different risks. We fail to see any financial interest that could interfere with the potential grand jurors' ability to be fair and unbiased merely because they were or still are insured by Liberty Mutual for automobile liability insurance.
While the motion judge did not mention that the DAG brought the information to the attention of the designated judge in the absence of the Assignment Judge, defendants argue that R. 3:6-3(a) specifies that only the Assignment Judge can be contacted to address the question of bias, or a financial, proprietary or personal interest of a grand juror and determine whether such interest justifies excusal. Followed to its logical extension, such an interpretation would impede the functioning of the grand jury where a question of bias or personal interest arises and the Assignment Judge is ill, on vacation or unavailable because of the duties of the position. In short, the grand jury proceedings should not be in state of suspension until the Assignment Judge is available. While we fully expect that the DAG or prosecutor, as the case may be, will first attempt to contact the Assignment Judge, a designated judge may have to act in the stead of the Assignment Judge when the Assignment Judge is unavailable. We do not discern that R. 3:6-3(a) subscribes to a process limiting questions of a grand juror's potential bias or personal interest to the exclusive province of the Assignment Judge. Indeed, the orders of the Chief Justice naming back-up judges to act in place of the Assignment Judge or the Supervising Judge of the State Grand Jury who is the same individual in this case speaks volumes on how R. 3:6-3(a) should be administered.
Reversed and remanded for reinstatement of the indictment.
NOTES
[1] In an order of September 3, 1997 effective September 1, 1997, Chief Justice Poritz designated Superior Court Judge Linda R. Feinberg the judge of the Superior Court to impanel and supervise the State Grand Jury or Grand Juries. The Chief Justice designated Superior Court Judges Thomas DeMartin, Neil H. Shuster and Judith A. Yaskin to act in the absence or unavailability of Judge Feinberg. The order of September 3, 1997 was amended on July 22, 1998, effective August 25, 1998, to designate Superior Court Judge Charles A. Delehy in place of Judge DeMartin and was amended again on June 26, 2000, effective July 3, 2000, to designated Superior Court Judge Maria Marinari Sypek in place of Judge Yaskin.